```
             UNITED STATES DISTRICT COURT
                DISTRICT OF MINNESOTA
              Criminal No. 11-174(DSD/FLN)
```

United States of America,

       Plaintiff,

v.                                   **ORDER**

Carlos Serabia-Ferrel,

       Defendant.


    This matter is before the court upon the objection of the government to the July 8, 2011, report and recommendation of Magistrate Judge Franklin L. Noel. The magistrate judge recommends granting the motion of defendant Carlos Serabia-Ferrel[1] to suppress evidence and statements. The government objects. Based on a review of the file, record and proceedings herein, the court overrules the objection and adopts the report and recommendation.


                              **BACKGROUND**

    At approximately 9:00 p.m. on February 17, 2011, a Federal Bureau of Investigation (FBI) tactical team executed a search warrant for the garage of a multi-story apartment building at 1619 73rd Avenue NE in Fridley, Minnesota. The search of the garage

---

[1] Serabia-Ferrel pleaded guilty to possession with intent to distribute methamphetamine and was sentenced under the name Sarabia-Ferrel on January 25, 2011. See Judgment, United States v. Carlos Sarabia-Ferrel, No. 09-cr-344 (D. Minn. Jan. 25, 2011) (Tunheim, J.) (amended February 3, 2011).

yielded no drugs.[2]  At 9:05 p.m., two FBI Special Agents went to apartment 201 of the same building to conduct a warrantless "knock-and-talk."  Tr. 3:16-21.[3]  The Special Agents were wearing FBI ballistic vests. Tr. 4:4, 17:1-3.  Three SWAT team members and two other officers accompanied the Special Agents.  Tr. 3:24-4:1. The SWAT team members were wearing helmets and bearing M4 carbines. See Tr. 18:2-8.  One Special Agent knocked on the door for approximately five to ten seconds.  Tr. 16:5-6.  Nonparty Miguel Lopez Rosales opened the door after fifteen to twenty seconds.  Tr. 16:16-19.  Serabia-Ferrel appeared at the door "immediately thereafter."  Tr. 4:18-19.  The Special Agents identified themselves and told Rosales and Serabia-Ferrel that "we'd like to come into the apartment to speak with them."  Tr. 5:3-5.  Rosales and Serabia-Ferrel "stepped back several steps" and the Special Agents said, "Can we come in?"  Tr. 5:7-8.  Rosales and Serabia-Ferrel did not respond verbally but stepped back from the door.  Tr. 5:14-21.  The Special Agents did not tell Rosales or Serabia-Ferrel that they had a right not to consent to the entry, search or conversation.  See Tr. 18:24-19:2, 19:20-22.

The Special Agents, SWAT team members and officers entered the apartment.  The SWAT team members and officers did a protective

---

[2] The FBI later found drugs in two vehicles in the garage.

[3] "Tr." refers to the partial transcript of the June 27, 2011, hearing on the motion to suppress.  See ECF No. 28.

sweep of the apartment and pat searched Serabia-Ferrel and the other occupants. Tr. 20:6-13, 21:18-22. One Special Agent then told Serabia-Ferrel that he was an FBI agent investigating drug trafficking and that he wanted to conduct an interview and search the apartment. Tr. 6:20-25. Serabia-Ferrel is 46 years old, he did not appear intoxicated at the time of the search and he speaks English. Tr. 7:5-16. Serabia-Ferrel responded, "Yes, I'll talk to you," and agreed that the Special Agents and other officers could search the apartment. Tr. 6:25-7:1, 8:3-5. The officers searched the apartment, but did not locate any illegal drugs. Tr. 8:8-9.

Meanwhile, the Special Agents asked Serabia-Ferrel to accompany them to the back bedroom.[4] Tr. 9:17-22. Serabia-Ferrel agreed. Tr. 9:6-7. In the bedroom, one Special Agent told Serabia-Ferrel that he "had strong beliefs that there were narcotics in the apartment" based on Serabia-Ferrel's ongoing methamphetamine trafficking. He also asked, "What were you going to do this evening?" Tr. 10. Serabia-Ferrel replied that he was going to sell three pounds of methamphetamine. Tr. 24:8. The Special Agent asked where the methamphetamine was, and Serabia-Ferrel pointed to a nearby bag. Tr. 10:24-11:2. He asked

---

[4] Initially a third officer was also in the bedroom searching the closet. Tr. 9.

Serabia-Ferrel for permission to open the bag, and Serabia-Ferrel said "yeah." Tr. 11:2-4. The bag contained three loaves of methamphetamine. Tr. 11:5-7.

The Special Agents then sought a search warrant. Tr. 11:19-21. After midnight, the Special Agents executed the warrant, placed Serabia-Ferrel under arrest and gave him a Miranda warning. Tr. 11:21-24. Serabia-Ferrel "very quickly" told the Special Agents that he wanted an attorney. Tr. 11:25-12:3.

On May 17, 2011, Serabia-Ferrel was indicted and charged with conspiracy to distribute 50 grams or more of methamphetamine and possession with intent to distribute methamphetamine. Serabia-Ferrel moved to suppress evidence obtained as a result of the search and seizure. The magistrate judge held a suppression hearing and, on July 7, 2011, recommended that the court grant the motion to suppress. The government objects.

## DISCUSSION

The court applies de novo review when a party objects to a report and recommendation disposing a motion to suppress. See 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b); D. Minn. LR 72.2(b).

**I.   Pre-warrant Search**

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A

warrantless search and seizure inside a home is presumptively unreasonable. See Payton v. New York, 445 U.S. 573, 586 (1980). Voluntary consent may overcome the presumption. See United States v. Poe, 462 F.3d 997, 999 (8th Cir. 2006) (citing Anderson v. Creighton, 483 U.S. 635, 641 (1987)). "The government bears the burden of proving voluntary consent." United States v. Quintero, No. 10-3280, 2011 WL 3426220, at *5 (8th Cir. Aug. 8, 2011).

In order to show voluntary consent, "the government must show that a reasonable person would have believed that the subject of a search gave consent that was the product of an essentially free and unconstrained choice, and that the subject comprehended the choice that he or she was making." United States v. Sanders, 424 F.3d 768, 773 (8th Cir. 2005) (citations and internal quotation marks omitted). The burden "cannot be discharged by showing mere acquiescence to a claim of lawful authority." Id. (citation and internal quotation marks omitted).

To determine if consent was voluntary, the court pays "particular attention to the characteristics of the person giving consent and to the encounter from which the consent arose." United States v. Sanchez, 156 F.3d 875, 879 (8th Cir. 1998). The court may consider:

> (1)[defendant's] age; (2) his general intelligence and education; (3) whether he was intoxicated at the time; (4) whether he was informed of his Miranda rights before consenting; (5) whether any previous arrests would have informed him of his rights and

5

>protections; (6) the length of time he was detained; (7) whether the officers acted in a threatening manner; (8) whether the police made any promises or misrepresentations; (9) whether the police had [defendant] in custody or under arrest at the time; (10) whether he consented in public; and (11) whether [defendant] was silent during the search.

United States v. Johnson, 619 F.3d 910, 918 (8th Cir. 2010).

"[S]uch factors should not be applied mechanically. The inquiry turns on the totality of the circumstances, which must demonstrate that the police reasonably believed the search to be consensual." United States v. Zamoran-Coronel, 231 F.3d 466, 469 (8th Cir. 2000) (citations and internal quotation marks omitted).

"The question of whether a person expressed consent to a search is a question of fact, as is the question of whether such consent was voluntary." United States v. Spotted Elk, 548 F.3d 641, 650 (8th Cir. 2008).

"Voluntary consent may be express or implied." United States v. Lakoskey, 462 F.3d 965, 973 (8th Cir. 2006). In some circumstances, "the opening of the door and stepping back constitute[s] an implied invitation to enter." United States v. Turbyfill, 525 F.2d 57, 59 (8th Cir. 1975); see United States v. Greer, 607 F.3d 559, 563 (8th Cir. 2010). However, "an unconstitutional search occurs when officers gain visual or physical access to a ... room after an occupant opens the door not voluntarily, but in response to a demand under color of authority."

6

United States v. Conner, 127 F.3d 663, 666 (8th Cir. 1997) (no consent where officer knocked repeatedly and defendant did not open door until officer shouted "open up").

In the present case, there is no evidence that Rosales and Serabia-Ferrel opened the door as a result of a demand under color of authority: the occupants voluntarily opened the door. However, any express or implied consent given thereafter was a result of submission to authority rather than voluntary choice. "A police attempt to 'knock and talk' can become coercive if the police assert their authority, refuse to leave, or otherwise make the people inside feel they cannot refuse to open up." Spotted Elk, 548 F.3d at 656 (citation omitted).

Once the door was open, Serabia-Ferrel faced an overwhelming show of force by seven officers, several of whom were in SWAT gear brandishing M4 carbines. The officers entered and conducted a two- to three-minute sweep of the apartment. The officers pat searched each occupant.[5] The officers did not inform Serabia-Ferrel of his right to refuse consent. See United States v. Drayton, 536 U.S. 194, 206 (2002) (knowledge of right to refuse consent relevant factor in evaluating totality of circumstances). All of these events occurred at night. In mitigation, Serabia-Ferrel is 46-years old, was not intoxicated at the time and has prior

---

[5] The sweep and pat searches were warranted, proper acts to preserve officer safety.

criminal convictions and experience with law enforcement. These factors do not, however, overcome the "implied threat or covert force" created by the presence and actions of seven armed officers and agents. Zamoran-Coronel, 231 F.3d at 470. In light of the totality of the circumstances, belief that Serabia-Ferrel gave consent that was an "essentially free and unrestrained choice" was not reasonable. The government has not met its burden to show that Serabia-Ferrel voluntarily consented to the entry and search. Therefore, the objection fails, and suppression of evidence is warranted.

**II. Pre-Miranda Statements**

Statements made by Serabia-Ferrel in the apartment must also be suppressed. The court has determined that Serabia-Ferrel's consent to entry and search were not voluntary because the government has shown only that he acquiesced to force. No intervening events purged the taint of the unlawful entry and search, and the statements by Serabia-Ferrel occurred as a direct result of the officers' exploitation of Serabia-Ferrel's acquiescence to force. As a result, in addition to the lack of a Miranda warning, suppression is warranted under the fruit of the poisonous tree doctrine, and therefore the objection fails.

**CONCLUSION**

Following de novo review, the court finds that the well-reasoned report and recommendation of the magistrate judge correctly disposes the motion. Accordingly, **IT IS HEREBY ORDERED** that:

1.  The objection [ECF No. 33] is overruled;

2.  The report and recommendation [ECF No. 32] is adopted in full; and

3.  The motion to suppress evidence obtained as a result of search and seizure [ECF No. 21] is granted.

Dated:  August 17, 2011

s/David S. Doty
David S. Doty, Judge
United States District Court
